UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| HERBERT B. WARD, | ) |
| | ) |
| Plaintiff, | ) 2:22-CV-155 |
| | ) |
| vs. | ) |
| | ) |
| DEPUTY STANLEY, JEFF CASSIDY, and | ) |
| SULLIVAN COUNTY SHERIFF OFFICE, | ) |
| | ) |
| Defendants. | |

**REPORT AND RECOMMENDATION**

Plaintiff Herbert B. Ward filed a pro se Complaint [Doc. 1] and a Motion [Doc. 4] to proceed *in forma pauperis*. On January 11, 2023, this Court granted Plaintiff's request to proceed *in forma pauperis*. [Doc. 5]. The Court then undertook the screening process required when litigants are granted permission to proceed without prepayment of fees. In doing so, the Court noted that Plaintiff did not provide a sufficient factual basis to support his claims but observed that Plaintiff could potentially set forth a colorable claim under 42 U.S.C. § 1983 if he provided a more fully developed factual basis for it. Given that Plaintiff was representing himself, the Court found it appropriate to provide him with an opportunity to file an amended complaint to address the noted deficiencies in his Complaint. Plaintiff then filed an Amended Complaint [Doc. 6] on January 27, 2023. The Court will now consider the Amended Complaint in screening Plaintiff's case.

I. **FACTUAL BACKGROUND**

Plaintiff filed a Complaint on November 18, 2022. [Doc. 1]. Therein, Plaintiff alleges that Deputy Stanley of the Sullivan County Sheriff's Office violated procedures outlined in the

Tennessee Code's domestic abuse provisions[1] when arresting Plaintiff. More specifically, Plaintiff states that on June 8, 2022, Deputy Stanley responded to a "wellness call" where he then arrested Plaintiff for aggravated assault involving domestic violence. Plaintiff asserts that he told Deputy Stanley he had a video of a person named Donna Gail McMurray Cluesman[2] hitting Plaintiff over the head with a stolen jewelry box, but that Deputy Stanley did not watch the video. Further, Plaintiff claims that Deputy Stanley did not ask Plaintiff any questions about the incident, took $2.50 from Plaintiff's pocket, and then arrested Plaintiff. While Plaintiff named Jeff Cassidy and the Sullivan County Sheriff's Office as defendants in his original complaint in addition to Deputy Stanley, he makes no allegations in that complaint against Jeff Cassidy or the Sullivan County Sheriff's Office.

Plaintiff then filed an Amended Complaint on January 27, 2023. [Doc. 6]. In the Amended Complaint, Plaintiff first describes his relationship with Ms. Cluesman in detail. Ms. Cluesman is his ex-fiancée, and Plaintiff describes instances where she was allegedly abusive to him. [Doc. 6, p. 5]. On the night of the incident in question, Plaintiff alleges that he and Ms. Cluesman got into an argument because he believed she was cheating on him and had also broken into a neighbor's home. [Doc. 6, p. 6]. Plaintiff states that when he told her he would report her theft to the police, she poked Plaintiff in the eye, grabbed at his neck and shirt, and hit him over the head three times with a box, all of which he recorded on video. [Doc. 6, p. 7]. Plaintiff then left the scene and went to a neighbor's trailer. [Doc. 6, p. 8]. When he returned, two officers, including Deputy Stanley were at the scene to arrest him. *Id.* Plaintiff alleges they pulled out tasers on him before arresting him, but he does not state whether they used the tasers. *Id.* He further alleges that the officers did

---

[1] Plaintiff does not cite to a section, but the Court notes that Tenn. Code Ann. § 36-3-619 sets out the procedure a police officer should follow when making an arrest in a domestic violence situation.
[2] The Court previously spelled Ms. Cluesman's name "Cloesman" because that is how the name appeared to be spelled in Plaintiff's original complaint. In his Amended Complaint, Plaintiff clarifies that the name is spelled "Cluesman."

not ask him questions and were not wearing body cameras. [Doc. 6, p. 13]. While Deputy Stanley drove Plaintiff to jail after the arrest, Plaintiff asserts that he and Deputy Stanley talked, but he was not *Mirandized*. [Doc. 6, p. 8]. Plaintiff alleges that Deputy Stanley told him nothing seemed to be wrong with Ms. Cluesman at the scene of the arrest. *Id.* Based on this information, it appears Plaintiff is arguing that Deputy Stanley violated the Tennessee Code's domestic violence provisions, as well as the Fourth and Fifth Amendments. *See* [Doc. 6, p. 8, 10, 13].

In his Amended Complaint, Plaintiff provides further detail as to why he named Jeff Cassidy and the Sullivan County Sheriff's Office as Defendants. Plaintiff states that Jeff Cassidy should be liable for Deputy Stanley's actions in failing to properly train him on the department's procedures, because Mr. Cassidy is Deputy Stanley's boss. [Doc. 6, p. 12]. Additionally, Plaintiff seems to argue that the police department is liable under a theory of vicarious liability[3] and for creating a custom of violating the Tennessee Code's domestic violence provisions. *Id.* Plaintiff asserts that multiple people in the jail where he is being housed were arrested under the domestic code even though they were not the primary aggressor. *Id.* Finally, Plaintiff asserts that his rights were violated during a preliminary hearing after his arrest, because he was denied the right to face his accused and his lawyer failed to make objections to certain evidence offered that on the issue of whether he was the primary aggressor. [Doc. 6, p. 15]. For example, Plaintiff contends that Ms. Cluesman's testimony about Plaintiff holding a knife during the altercation was improperly admitted. *Id.* Plaintiff seeks $300,000,000.00 in monetary relief and requests that charges against him be dropped, and that Deputy Stanley be fired. [Doc. 6, p. 17].

---

[3] Plaintiff references a personal injury case in which the plaintiff sued McDonald's for an injury that happened at one of its stores.

## II. LEGAL ANALYSIS

As the Court noted previously when screening Plaintiff's complaint, a district court may dismiss a complaint as frivolous or if it fails to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii). *See also Neitzke v. Williams,* 490 U.S. 319 (1989). In considering the Plaintiff's original and amended complaints, they set forth allegations that a police department and certain of its officers violated the Tennessee Code's domestic violence provisions and Plaintiff's Fourth and Fifth Amendment rights.

In undertaking the present review, the Court liberally construes Plaintiff's claims because he is proceeding pro se. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Even under this lenient standard, a claim will be dismissed if it is frivolous, meaning it lacks "'an arguable basis either in law or fact.'" *Brand v. Motley*, 526 F.3d 921, 923 (6th Cir. 2008) (quoting *Neitzke,* 490 U.S. at 325). For a complaint to survive the § 1915 screening process, it "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Zelesnik v. GE Healthcare*, No. 1:18CV2443, 2018 WL 5808749, at *1 (N.D. Ohio Nov. 6, 2018) (quoting *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010)). This being the case, the Court will not "conjure allegations on a litigant's behalf" to help a pro se litigant survive the § 1915 screening process. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). This limitation helps courts avoid "'transform[ing] . . . from their legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies. . . .'" *Profitt v. Divine Sol.*, No. 3:10-CV-311-S, 2010 WL 2203310, at *1 (W.D. Ky. May 27, 2010) (quoting *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985)).

### a. Law governing claims alleging violation of civil rights claims

Plaintiffs may sue government officials for violations of rights under the Constitution or other laws under 42 U.S.C. § 1983. *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). That Section creates a federal cause of action where a person acting under color of law causes a plaintiff to be deprived of "any rights, privileges, or immunities secured by the Constitution and laws." To successfully pursue a § 1983 action, a plaintiff must demonstrate both that he or she was deprived of rights under the Constitution or other laws and that a defendant caused the deprivation while acting under color of law. *Block v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). "If a plaintiff fails to make a showing on any essential element of a § 1983 claim, it must fail." *Redding*, 241 F.3d at 532. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* (quoting *United States v. Classic,* 313 U.S. 299, 326 (1941)).

### b. Plaintiff's claims against Deputy Stanley

Plaintiff first asserts that his Fourth Amendment rights were violated and specifically states that Deputy Stanley violated Tennessee law when he arrested him and charged him with aggravated assault and domestic violence. Under Tennessee law, officers are instructed to arrest the primary aggressor if the officer has "probable cause to believe a crime involving domestic violence had occurred." Tenn. Code Ann. § 36-3-619; *Denton v. Rievley*, No. 1:07-CV-211, 2008 WL 4899526 (E.D. Tenn. Nov. 12, 2008). Additionally, an arrest without probable cause is a Fourth Amendment violation and is actionable under 42 U.S.C. § 1983. Probable cause exists where the "facts and circumstances within the officer's knowledge [ ] are sufficient to warrant a prudent person ... in believing ... that the suspect committed, is committing, or is about to commit

an offense." *Smith v. City of Wyoming*, 821 F.3d 697, 715 (6th Cir. 2016), *as amended* (May 18, 2016) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979)).

Here, Plaintiff claims that Deputy Stanley ignored evidence he offered to present which would have demonstrated that he was the victim rather than the aggressor in the dispute with Ms. Cluesman, and further failed to ask Plaintiff questions which would have allowed him to provide his side of the story. Liberally construing Plaintiff's claim, he appears to assert that Deputy Stanley did not have probable cause to arrest him because Ms. Cluesman was the primary aggressor. Plaintiff describes an altercation in which Ms. Cluesman hit him multiple times. Plaintiff left the scene and then returned to find officers there to arrest him. He notes that the boyfriend of one of Ms. Cluesman's daughters had called the police sometime during or shortly after the altercation. The Court notes that even if Plaintiff and Ms. Cluesman engaged in an altercation and Ms. Cluesman was in fact the primary aggressor, Plaintiff does not necessarily have a claim against Deputy Stanley. Even if Deputy Stanley violated Tennessee law by not arresting Ms. Cluesman, if he had probable cause to believe that Plaintiff was guilty of aggravated assault and domestic violence, he had proper grounds to arrest Plaintiff. While Plaintiff takes issue with how the preliminary hearing in his case was conducted, his Amended Complaint makes it clear that the judge hearing the case found that there was probable cause for the charges brought against Plaintiff. That finding further supports the conclusion that Deputy Stanley had sufficient probable cause to arrest Plaintiff, even if Plaintiff is ultimately found to be innocent of the charges brought against him. For these reasons, the Court finds it necessary to recommend dismissal of his Fourth Amendment claims against Deputy Stanley.

Plaintiff next alleges that he was not *Mirandized* prior to speaking with Deputy Stanley while being driven to jail after his arrest. The Fifth Amendment guarantees the right of individuals

against self-incrimination. U.S. CONST. amend. V. To protect this right, police officers must provide certain warnings before subjecting an arrestee to a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966). Determining whether *Miranda* applies, and in turn, whether officers were obligated to provide warnings, requires a fact-intensive analysis of whether a reasonable person in Plaintiff's position would have believed he was "in custody" during questioning. *United States v. Pacheco-Alvarez*, 227 F. Supp. 3d 863, 881 (S.D. Ohio 2016). Here, Plaintiff does not allege that officers asked any him questions. In fact, the officers' failure to ask him questions provides part of the basis for his Fourth Amendment claim. Plaintiff says that he and Deputy Stanley "talked" on the ride to the jail but then goes on to describe statements made by Deputy Stanley, but not by him. The Fifth Amendment is designed to protect individuals against making statements that could be used to incriminate them, but where an arrestee has made no statement, there is no Fifth Amendment right to be protected. Accordingly, the Court must recommend dismissal of Plaintiff's Fifth Amendment claim.

    c. *Plaintiff's claims against Jeff Cassidy and Sullivan County*

Plaintiff further alleges that Jeff Cassidy and the Sullivan County Sheriff's Office are liable for Deputy Stanley's actions because of their failure to train him and that the Sheriff's Office has arrested multiple people in violation of Tennessee's domestic violence laws. While suits against local law enforcement divisions, such as the sheriff and police departments, are not actionable under § 1983, in the liberal construction of a pro se pleading the Court may treat a § 1983 claim against a law enforcement division as being made against the city or county government in which the division is housed. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994); *see e.g. Weber v. Louisville Metro Police Dep't*, No. 3:16-cv-85-DJH, 2016 WL 1242584, at *3 (W.D. Ky. Mar. 29, 2016). Section 1983 permits suit against local governments only when the alleged injury results

from the enactment of a policy or custom of the municipality. *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978)). In other words, municipalities "cannot be held liable [for the actions of their employees] under a *respondeat superior* theory for § 1983 violations" unless the employee was implementing a policy or custom of the municipality. *Cooper v. Rhea Cnty., Tenn.*, 302 F.R.D. 195, 200 (E.D. Tenn. 2014) (internal citations omitted).

Section 1983 liability can also arise from a systematic failure to train police officers "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989); *see also Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010). "To succeed on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the [county's] deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Sollenberger v. Sollenberger*, 173 F. Supp. 3d 608, 626 (S.D. Ohio 2016) (citing *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006)). To establish deliberate indifference under the second prong of a failure to train claim, the plaintiff "must show prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005).

Here, Plaintiff alleges that Officer[4] Cassidy failed to adequately train Deputy Stanley and appears to further contend that the Sullivan County Sheriff's Department had a policy of wrongly arresting people involved in domestic violence incidents who were not the primary aggressor. In

---

[4] The Court was not provided with Officer Cassidy's title; thus, the term officer is being used to designate him as a member of law enforcement.

support, he makes the conclusory assertion that several inmates housed in the Sullivan County Jail with him were wrongly arrested on domestic violence charges despite not being the primary aggressor. He provides no information about how these other inmates he references came to be charged, nor does he provide any information regarding how he reached the conclusion that his fellow inmates were wrongly arrested. Moreover, Plaintiff does not state what officer(s) and agency was involved in the arrest of these inmates, whether warrants had been issued for their arrest, etc. Without such further details, the Court is unable to determine whether Deputy Stanley was acting in accordance with a policy or custom of the Sullivan County Sheriff's Department which led to a violation of his rights.

The Court next turns to Plaintiff's claim that Deputy Stanley was not properly trained. Plaintiff appears to contend that because Deputy Stanley violated the Tennessee domestic violence law in arresting him and in failing to arrest Ms. Cluesman, it necessarily follows that he did not have proper training regarding how to comply with that law. However, Plaintiff does not describe in what manner Deputy Stanley's training was inadequate, as required to establish that such a failure amounted to deliberate indifference. On a deliberate indifference claim, Plaintiff must show not only that specific training was inadequate but also a systematic failure on the part of the Sheriff's Office to train its officers. *Miller*, 606 F.3d at 255. Such facts must show "prior instances of unconstitutional conduct" and a "history of abuse" which has been ignored. *Fisher*, 398 F.3d at 849. Plaintiff has not provided any facts related to Deputy Stanley's training or a history of abuse by the Sheriff's Office. Even if the Court assumes that Deputy Stanley did not follow applicable law, the Court cannot simply assume that his failure to do so resulted from inadequate training.

Based on this lack of factual development as to the failure to train issue and the question of whether Deputy Stanley was acting in accordance with a policy or custom established by the

Sullivan County Sheriff's Department, the Court must recommend dismissal of Plaintiff's claims against both Officer Cassidy and the Sullivan County Sheriff's Office.

### d. *Plaintiff's claims regarding his preliminary hearing*

Finally, Plaintiff appears to assert Sixth Amendment claims by alleging his rights were violated in a preliminary hearing in which he was not allowed to confront witnesses against him, and where his attorney failed to make certain objections. It is unclear whether Plaintiff is attempting to add his defense attorney or any court personnel as defendants in this suit or whether, instead, he addresses what happened during his preliminary hearing as a way of showing there was no probable cause to arrest him. In liberally construing his claims, the Court will address Plaintiff's concerns with his preliminary hearing, but for reasons explained below will recommend that any claims arising from the hearing be dismissed.

In criminal prosecutions, the Sixth Amendment guarantees the accused the right to confront witnesses against him and the right of assistance of counsel. U.S. CONST. amend. VI. Plaintiff asserts that he was not present for the preliminary hearing held in his case because of his appointed lawyer but does not provide any explanation for what his appointed attorney did or did not do that led to Plaintiff's absence. The Court does note that Plaintiff had a right to be present at a preliminary hearing and if he was deprived of that right without his consent, he could have suffered a violation of his constitutional rights. *Ware v. Brewer*, 502 F. Supp. 3d 1216 (E.D. Mich. 2020) (citing *Rushen v. Spain*, 464 U.S. 114, 117, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983)) ("A defendant in a criminal case has a constitutional right to be present at all critical stages of the trial.").[5] However, as stated above, Plaintiff does not provide enough information to determine why he was not present.

---

[5] A preliminary hearing is a critical stage of a criminal prosecution under Tennessee law. *State v. Whaley*, 51 S.W.3d 568, 570 (Tenn. Crim. App. 2000).

While he states that he was not present, Plaintiff then describes photographs that he says Ms. Cluesman was permitted to offer into evidence from her phone. Plaintiff claims these photographs reflected injuries Ms. Cluesman received at the hands of someone else, which she had shown him prior to the incident at issue. Plaintiff further asserts that Deputy Stanley would have taken his own pictures of Ms. Cluesman's physical injuries if she had any but contends that the deputy did not do so, which further supports the court's error in permitting Ms. Cluesman's photos into evidence. Plaintiff does not say how he came to know what took place in the preliminary hearing nor does he state what other evidence was presented. As noted above, because Plaintiff remained in custody following the preliminary hearing, the Court holding the hearing had to have found that probable cause existed to support the crimes with which Plaintiff was charged.

Next, Plaintiff appears to be asserting an ineffective assistance of counsel claim against his attorney for failure to make appropriate objections during his preliminary hearing. To show counsel was ineffective, a defendant must show that counsel's representation was defective and prejudicial. *Strickland v. Washington*, 466 U.S. 668, 692 (1984). Ineffective assistance claims are generally raised during post-conviction proceedings brought under 28 U.S.C. § 2255, and they may not be brought under § 1983 because attorneys do not act under color of state law when defending individuals in criminal proceedings. *United States v. Tab*, 259 F. App'x 684, 699 (6th Cir. 2007) (discussing ineffective assistance claims on direct appeal); *Floyd v. Cnty. of Kent*, 454 F. App'x 493, 497 (6th Cir. 2012) (discussing § 1983). Here, Plaintiff states that his attorney failed to make certain objections and that he was wrongly detained. However, he does not develop this claim any further, and even if he did, suing a defense attorney for ineffective assistance of counsel is not the proper way to make such a claim. As such, the Court would recommend dismissal of any Sixth Amendment claims to the extent Plaintiff is attempting to add those claims to his Amended

Complaint, but that dismissal of any Sixth Amendment claim related to the right to confront and cross examine witnesses be without prejudice.

III. CONCLUSION

For reasons stated above, the undersigned recommends that Plaintiff's Amended Complaint [Doc. 6] be **DISMISSED with prejudice,** except that any Sixth Amendment claim asserted by Plaintiff regarding his right to confront and cross examine witnesses be dismissed without prejudice. This matter is to be presented to the District Judge pursuant to this Report and Recommendation under the authority of *Gibson v. R.G. Smith Co.*, 195 F.2d 260, 263 (6th Cir. 1990) wherein the Court states that such matters proceed automatically to a district judge for examination of the complaint after a magistrate judge has granted the petition to proceed *in forma pauperis*.[6]

                                                                  Respectfully submitted,

                                                                   /s/Cynthia Richardson Wyrick
                                                                  UNITED STATES MAGISTRATE JUDGE

---

[6] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582 (6th Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing the failure to file objections in compliance with the time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).